USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/16/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

REED SMITH LLP,

Appellant,

-v-

ELETSON HOLDINGS INC.,

Appellee.

---------------------------------------------------------------------X

26-cv-8897 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

This appeal arises out of voluntary bankruptcy of Appellee Eletson Holdings Inc. ("Holdings").[1] Appellant Reed Smith LLP ("Reed Smith" or the "Law Firm") was counsel to Holdings. On November 4, 2024, the Bankruptcy Court confirmed a plan of reorganization (the "Plan") submitted by Holdings' creditors over the competing plan submitted by Holdings' former officers and directors, which that court found was unconfirmable and infeasible. Dkt. No. 5-6; Order Confirming Creditors' Amended Joint Chapter 11 Plan, *In re Eletson Holdings Inc.* ("Bankruptcy Proceeding"), No. 23-10322 (Bankr. S.D.N.Y. Nov. 4, 2024), Dkt. No. 1223; *see also In re Eletson Holdings Inc.*, 2025 WL 2710411, at *2–3 (S.D.N.Y. Sept. 22, 2025).[2] The Plan became effective on November 19, 2024 (the "Effective Date"), when no stay of its effect had been sought or obtained and the new board of Holdings waived all conditions precedent. Dkt. No. 7 ¶ 9. By operation of the Plan, the ownership and control of Holdings transferred from its prior directors to a new board, its ownership vested in its new owners, and retention of all

---

[1] The bankruptcy proceedings were initially commenced on an involuntary basis by three of Holdings' creditors but were converted to a voluntary bankruptcy under Chapter 11 on Holdings' motion.
[2] Citations to the Bankruptcy Court's docket in Case No. 23-10322 will use "Bankr. Dkt."

professionals by Holdings—including Reed Smith—terminated. In the order under appeal (the "Order"), the Bankruptcy Court confirmed that the attorney-client privilege held by Holdings pre-petition remained with Holdings post-petition and was controlled by its new management following the Effective Date, and authorized the professionals previously retained by Holdings (the "Former Professionals") to turn over their Eletson Client Files[3] to Holdings through its current counsel. Dkt. No. 5-3; Bankr. Dkt. Nos. 2116, 2117. The Former Professionals included: Skadden, Arps, Slate, Meagher & Flom LLP; Reed Smith; Riveron RTS LLC; Investments and Finance Ltd.; and Harold Furthgott-Roth. Bankr. Dkt. No. 2116 at 3 n.4. On September 2, 2026, Reed Smith, acting on its own behalf, objected to the Order and sought to stay its effect. Bankr. Dkt. No. 2109. On September 30, 2026, the Bankruptcy Court denied the motion for a stay. Dkt. No. 5-4; *see also* Bankr. Dkt. Nos. 2128, 2129. In a motion dated October 7, 2026, Reed Smith seeks the same relief from this Court, pursuant to Federal Rule of Bankruptcy Procedure 8007(b). Dkt. No. 3. Substantially for the reasons stated in the well-reasoned opinion of the Bankruptcy Court, the Court denies the motion for a stay but modifies the date for compliance.

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citation modified). The Court considers the following four factors in deciding whether to grant a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the

[3] The Eletson Client Files are defined as "the client files developed and maintained in the course of, or in connection with, the representation of the Debtors." Bankr. Dkt. No. 2116 at 3 n.4 (internal quotation marks omitted).

other parties interested in the proceeding; and (4) where the public interest lies." *SEC v. Citigroup Glob. Mkts. Inc.*, 673 F.3d 158, 162 (2d Cir. 2012) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

The Bankruptcy Court correctly held that Reed Smith identifies no irreparable harm flowing from the Order. For a stay pending appeal, "[a]s in preliminary injunction [contexts], 'the showing of irreparable harm is perhaps the single most important prerequisite.'" *Trump v. Vance*, 481 F. Supp. 3d 161, 164 (S.D.N.Y. 2020) (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)); *Rubin v. United States*, 119 S. Ct. 1, 1 (1998) (Rehnquist, C.J., in chambers) ("An applicant for stay first must show irreparable harm if a stay is denied."). The Law Firm argues here, as it did in the Bankruptcy Court, that it will suffer irreparable harm if the Order is not stayed because (1) "once disclosed, privileged materials cannot recover their confidentiality," Dkt. No. 5 ¶ 3; and (2) absent a stay, it will incur "unnecessary burden" by having "to review each document in the Eletson Client Files to determine which qualify as Vacatur Documents and must be withheld," *id.* ¶ 4.[4] The Bankruptcy Court correctly rejected both arguments. Holdings, and not Reed Smith, "possesses the privilege attached to [Holdings'] own documents." Dkt. No. 5-4 at 6. Reed Smith itself never owned the privilege. And, as to prior management, when it chose not to seek a stay of the order of confirmation, it gave up both its right to manage Holdings and its control of the privilege. *See CFTC v. Weintraub*, 471 U.S. 343, 349 (1985) ("[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well."). In any event, as the Bankruptcy Court also noted, the Supreme Court has expressly rejected the argument that the

[4] The "Vacatur Documents" are a subset of the Eletson Client Files that are "relat[ed] to the arbitration award, the enforcement thereof, or the monetization of it and the disputes underlying the award." Bankr. Dkt. No. 2104 at 2.

disclosure of otherwise privileged documents categorically imposes irreparable harm. "Appellate courts can remedy the improper disclosure of privileged materials in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 109 (2009). Tellingly, Reed Smith identifies no particular harm that will be caused to anyone but itself from production of the documents—no putative client filed papers in support of its application and no other professional appears to have objected to the order.[5]

As to the burden of reviewing and producing documents, the Bankruptcy Court also correctly held that "such an objection is no basis to deny an owner its property" and that "monetary harm is not irreparable." Dkt. No. 5-4 at 7 (internal quotation marks omitted). Indeed, citing *Sage Realty Corp. v. Proskauer Rose Goetz & Memdelsohn L.L.P.*, 91 N.Y.2d 30, 38 (1997), Reed Smith has reserved the right to seek reimbursement for its costs and expenses incurred in any review and production requested by Holdings. Dkt. No. 5 at 16 n.49. There is no reason to believe that Holdings would not be able to make such reimbursement if the Bankruptcy Court ordered it.[6] Moreover, Reed Smith's generic claim of harm from the production-review

---

[5] It cannot escape the Court's attention that Reed Smith is the defendant in an adversary proceeding commenced against it by Holdings. *See In re Eletson Holdings Inc.*, 2026 WL 2225569, at *3 (Bankr. S.D.N.Y. Aug. 3, 2026).

[6] By analogy, under Federal Rule of Civil Procedure 26, the Court does not credit generalized pleadings of discovery burden. *In re Concrete & Cement Additives Antitrust Litig.*, 2025 WL 20306, at *4 (S.D.N.Y. Jan. 2, 2025) ("Generalized objections of burden are insufficient to justify denying the demanded discovery." (citation modified)); *King v. Habib Bank Ltd.*, 2023 WL 3558773, at *2 (S.D.N.Y. Apr. 21, 2023) ("[G]eneral and conclusory objections as to relevant, overbreadth, or burden are insufficient to exclude discovery of requested information." (quoting *Melendez v. Greiner*, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003)); *Fischer v. Forrest*, 2017 WL 773694, at *1 (S.D.N.Y. Feb. 28, 2017) (Peck, Mag. J.) (An objecting party must explain why discovery is "burdensome" or "overly broad" and may not rely on general objections.); *Anvik Corp. v. Samsung Elecs.*, 2009 WL 10695623, at *5 (S.D.N.Y. Sept. 16,

process is particularly unpersuasive, given that this Court has already ordered that Reed Smith triage, sort, and produce certain Eletson Client Files. *See Eletson Holdings Inc. v. Levona Holdings Ltd.*, 2025 WL 2452351, at *5 (S.D.N.Y. Aug. 26, 2025) ("The [Second Circuit's] Administrative Stay Order does not shield from potential production documents in the possession of Eletson. To hold otherwise would be to halt these proceedings in their tracks, which the Second Circuit has declined to do.").

The Bankruptcy Court further correctly held that Reed Smith had not established a likelihood of success on the merits. Reed Smith's argument is predicated entirely upon a stay order issued by a motions panel of the Second Circuit in connection with appeals pending before it (the "Stay Order"). *Id.*; Dkt. No. 5-22. On January 16, 2025, Reed Smith appealed this Court's order granting the stipulation of Holdings—signed after the effective date had passed and when there was no request for a stay—dismissing an appeal of the order from the Bankruptcy Court confirming the Plan that had been filed on behalf of Holdings by its prior owners and managers. Dkt. No. 5 ¶ 12; Dkt. No. 5-20. On February 24, 2025, Reed Smith, on its own behalf, appealed another order of this Court in related litigation seeking vacatur of an arbitral award (the "Award") obtained by Holdings. The order at issue directed Reed Smith to turn over to Holdings its entire client file related to the Award, its enforcement, its monetization, and the disputes underlying the Award (the "Turnover Order"). Dkt. No. 5 ¶¶ 17-18; Dkt. No. 5-25. By order of June 25, 2025, a Second Circuit motions panel, acting with respect to both appeals, denied Holdings' motion to dismiss or remand, indicating that the merits panel would

---

2009) ("Unadorned assertions of undue burden, however, cannot support a limitation on discovery under Rule 26.").

decide whether Holdings' current management (which signed the stipulation) or its prior management (which objected to it) controlled Holdings. Dkt. No. 5-22. The motions panel also granted a stay of the Turnover Order, thereby preserving the status quo, with no explanation other than a citation to *Nken*. *Id.* Yet, the panel declined to grant Reed Smith's request to stay district court or bankruptcy court proceedings that "relat[e] to Eletson Holdings' and Eletson Corp's privileged documents" in any way. *See* Mot. for Stay and Injunction at 15, *In re Eletson Holdings Inc.*, No. 25-176 (2d Cir. June 11, 2025), Dkt. No. 47.1. In doing so, the Second Circuit rejected Reed Smith's notion that "the District Court is divested of jurisdiction to enter any orders addressing" privileged documents. *Id.* at 14. Instead, the Second Circuit "trust[ed] both courts [to] tailor their proceedings to protect the privileged property at issue." Dkt. No. 5-22.

The Stay Order does not itself establish a likelihood of success. That the motions panel of the Second Circuit directed to the merits panel the parties' argument regarding who controls Holdings, and what effect that control has on the appeal, does not mean that the Circuit has decided that prior management continues to control Holdings and that Reed Smith is authorized to act on its behalf. In this Court's view, it simply means that the Circuit prudently decided not to prejudge an issue when that issue should and could be decided by a merits panel with the benefit of full briefing and oral argument.[7] And that the Circuit decided to stay this Court's order directing that materials related to a contested and active arbitration award confirmation/vacatur proceeding be turned over, when the effect of such turnover would be to

[7] Notably, the Piraeus Court of Appeals (Maritime Disputes Division) recently rejected Reed Smith's argument that the Plan is not valid, concluding that Holdings has had lawful management since the Plan's Effective Date. Dkt. No. 7 ¶ 46; Notice of Suppl. Authority Under Fed. R. App. P. 28(j), *In re Eletson Holdings, Inc.*, No. 25-176 (2d Cir. Oct. 9, 2026), Dkt. No. 153.1. That decision further undercuts Reed Smith's showing of likelihood of success.

put the documents in the hands of Holdings' prior adversary, does not mean that Reed Smith is entitled to withhold from Holdings' current management *all* documents that it generated in the course of representing Holdings, regardless whether the documents related to the arbitration and regardless how long it may take for the Second Circuit to ultimately rule and issue its mandate. The Order addresses numerous categories of documents other than the Vacatur Documents, including, for example, "documents generated in connection with, among other things, Holdings' day-to-day business operations, contractual obligations, the restructuring process, claims that have been asserted against or by Holdings and its subsidiaries, postpetition financing matters, and Plan negotiations, among other categories of documents." Dkt. No. 5-2at 8 (internal quotation marks omitted). The documents also "include bankruptcy-specific records concerning the Chapter 11 case, DIP financing, plan negotiations, and records relating to the Debtors' financial affairs generally." *Id.* at 9 (internal quotation marks omitted). The Bankruptcy Court specifically carved out from Reed Smith's production obligations all documents that are the subject of the Second Circuit stay, pending the Second Circuit's decision in the appeal. Dkt. No. 5-3 ¶ 11 ("The Former Professionals are not required to produce Vacatur Documents within the Eletson Client Files . . . .").

Indeed, after it issued the Stay Order, the Second Circuit declined to stay a separate order of the Bankruptcy Court, also sustained by this Court on appeal, that rejected Reed Smith's arguments and authorized Microsoft Corporation to provide administrator-level designation to Holdings' current management, enabling access to privileged documents on servers corresponding to the domain "@eletson.com" and any associated secondary domains. *In re Eletson Holdings Inc.*, 2025 WL 2916904, at *1 (S.D.N.Y. Oct. 14, 2025); Bankr. Dkt. No. 1691 (the "Microsoft Order"). Reed Smith fails to explain why if Microsoft could be compelled to

give Holdings' current managers access to Holdings' privileged documents, Reed Smith cannot also be compelled to do the same. The Second Circuit denied a stay of the Microsoft Order. *See* Dkt. No. 5-4 at 3 n.6. Reed Smith argues that the key difference is that Microsoft was subject to the Microsoft Order and Reed Smith is not subject to that order. But that factual distinction does not resolve the pertinent question. The question here is not who the current custodian of the documents is, but who owns the privilege—and Reed Smith makes nary an argument that it (or the prior managers of its prior client) possess the privilege.

Finally, the Court finds persuasive the Bankruptcy Court's analysis of the last two factors. See Dkt. No. 5-4 at 7 ("A party cannot generate delay and then invoke it as a reason to deny relief. . . . The public interest favors the prompt implementation of confirmed plans and compliance with unstayed orders." (internal quotation marks omitted)).

Reed Smith requests an administrative stay so that it can seek further relief from the Second Circuit. The Court declines to grant such a stay which would only result in further delay in this case and prejudice to Holdings. The Court, however, directs the Bankruptcy Court to modify its order in one limited respect that may have a similar effect to the administrative stay that Reed Smith seeks. The Order directed the Former Professionals to "turn over the documents comprising the Eletson Client Files once . . . the applicable Former Professional has appealed but has not obtained a stay pending appeal." Dkt. No. 5-3 ¶ 14. On its face, that order would have the literal effect of requiring Reed Smith to turn over the Eletson Client File today. Such an order is impracticable. The Court thus directs the Bankruptcy Court to modify paragraph 14 to specify that Reed Smith is required to complete its production of the Eletson Client Files, as limited by the Order, by October 30, 2026. To the extent that Reed Smith believes this Court and the Bankruptcy Court have erred and it has a basis to seek further relief, it is up to Reed

Smith to raise such concerns with the Second Circuit posthaste.

SO ORDERED.

Dated: October 16, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge